**This order is SIGNED.**

Dated: August 26, 2016



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| In re:<br><br>GEORGE F. BENCH,<br><br>Debtor. | Bankruptcy Number: 12-26827<br><br>Chapter 7<br><br>Hon. Kevin R. Anderson |
|---|---|

### MEMORANDUM DECISION

In this chapter 7 case, the Debtor failed to comply with the Trustee's request to produce bank statements, failed to respond to the Trustee's motion for turnover of the bank statements, failed to obey the subsequent turnover order, failed to answer the Trustee's ensuing complaint to revoke his discharge, and failed to object to the Trustee's motion for default judgment. On November 22, 2013, the Court entered its judgment revoking the Debtor's discharge under 11 U.S.C. § 727(d)(3).[1] A month later, the Court closed the bankruptcy case. Some two and a half years later, the Debtor now asks the Court, based on an alleged satisfaction of the judgment and a penance of $2,793.00 paid to the Trustee, to set aside the default judgment and reinstate his discharge. For the reasons set forth herein, the Court declines to do so.

---

[1] Unless otherwise specified, all subsequent chapter and section references herein are to title 11 of the United States Code.

**I.    JURISDICTION AND VENUE**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (b)(2)(J). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

*A.    The Chapter 7 Case and the Trustee's Motion for Turnover.*

Debtor George Bench filed a voluntary chapter 7 petition on May 25, 2012.[2] At all relevant times during this case, the Debtor was represented by Eric Singleton. Shortly after the meeting of creditors held on June 19, 2012, the Debtor filed an Amended Schedule B disclosing an interest in multiple bank accounts.[3] On August 22, 2012, the Court granted the Debtor a discharge under § 727.[4]

On January 23, 2013, the chapter 7 trustee, Elizabeth Loveridge (the "Trustee"), filed a motion to compel the Debtor to turn over bank statements covering the month of the petition date and the two months prior thereto.[5] The Trustee served the motion and notice of hearing on the Debtor and his counsel.[6] The Debtor did not respond or object to the Trustee's motion for turnover, and the Court granted the motion on February 20, 2013 (the "Turnover Order").[7] The Turnover Order required the Debtor to deliver the requested bank statements to the Trustee by

---

[2] Docket No. 1. Unless otherwise noted, all subsequent references to the docket are to the Debtor's chapter 7 bankruptcy case, Case No. 12-26827.
[3] Docket No. 14.
[4] Docket No. 16.
[5] Docket No. 17.
[6] Docket No. 18.
[7] Docket No. 21.

March 6, 2013.[8] The Debtor did not comply with the Turnover Order until sometime after his bankruptcy case was closed on December 31, 2013.[9]

### B. The Trustee's Adversary Proceeding Under § 727(d)(3).

Based on the Debtor's failure to comply with the Turnover Order, the Trustee commenced an adversary proceeding on June 6, 2013, seeking revocation of the Debtor's discharge under § 727(d)(3).[10] Debtor's counsel received electronic notice of the complaint. On June 12, 2013, the Trustee filed a Return of Service indicating that on June 6, 2013, a process server had personally served the summons and complaint on the Debtor.[11] Neither counsel nor the Debtor ever answered the complaint. The Trustee filed a motion for default judgment on September 26, 2013,[12] and served the motion and notice of hearing by mailing a copy to the Debtor at his address on file with the Court.[13] On October 15, 2013, the clerk entered a default certificate.[14]

The Trustee applied to the Court for default judgment in accordance with the applicable local rule,[15] and the Honorable William T. Thurman held a hearing on the motion on November 13, 2013.[16] David A. Nill appeared for the Trustee, but no other appearances were noted on the record.[17] Based on the Debtor's failure to respond, and for other good cause appearing, the Court

---

[8] *Id.*

[9] Docket No. 40, ¶ 12.

[10] Docket No. 31. The adversary proceeding was assigned case no. 13-02194.

[11] Docket No. 2, Adv. No. 13-02194.

[12] Docket No. 5, Adv. No. 13-02194.

[13] Docket Nos. 5 and 9, Adv. No. 13-02194.

[14] Docket No. 11, Adv. No. 13-02194.

[15] *See* Bankr. D. Ut. LBR 7055-1(b) (2012).

[16] Docket Entry dated 11/13/2013, Adv. No. 13-02194. The Debtor's chapter 7 bankruptcy case and the Trustee's adversary proceeding were originally assigned to the Honorable William T. Thurman. On September 4, 2015, the Debtor's chapter 7 case and the associated adversary proceeding were reassigned to the Honorable Kevin R. Anderson.

[17] *Id.*

entered a default judgment revoking the Debtor's discharge on November 25, 2013 (the "Default Judgment").[18] On December 31, 2013, the Court closed the Debtor's chapter 7 case.[19]

### C. The Debtor's Motion to Reopen, Motion to Set Aside Default Judgment, and Motion to Reinstate Discharge.

On April 10, 2015—approximately seventeen months after the revocation of his discharge—the Debtor filed a motion to reopen the case and reinstate his discharge.[20] On May 11, 2015, the Debtor filed an amended motion that only sought to reopen the case so that "the Trustee and Mr. Bench can enter into an agreement to resolve the issue."[21] On May 20, 2015, the Court reopened the case with the following notation in the order: "The case is reopened solely for the purpose of allowing the Court to consider any dispute between the Debtor and the Trustee. Any approval of such must only be done on the record with notice to all creditors."[22]

On March 9, 2016, the Debtor filed a stipulated motion to set aside the Default Judgment and reinstate his discharge.[23] The stipulated motion was accompanied by a proposed order that the Court unsigned with the following language:

> The Stipulated Motion requires notice to all parties in interest and a hearing, as indicated by the order reopening this case (see Dkt. No. 37). The Debtor should amend the Stipulated Motion to specify the statutory and legal authority for the Court to set aside a default judgment revoking a discharge when such judgment was entered more than two years ago.[24]

---

[18] Docket No. 18, Adv. No. 13-02194.
[19] Docket Entry dated 12/31/2013.
[20] Docket No. 33.
[21] Docket No. 35.
[22] Docket No. 37.
[23] Docket No. 40.
[24] Docket Entry dated 03/10/2016.

4

On March 17, 2016, the Debtor filed a second stipulated motion to reinstate his discharge ("Motion to Reinstate Discharge"), and set it for hearing.[25] After the objection deadline had passed, the Debtor filed a proposed order, which the Trustee endorsed.[26]

While there were no objections to the Motion to Reinstate Discharge, and while the Trustee endorsed the proposed order, the Court had concerns about granting such relief in light of the facts of the case and the timing of the Debtor's motion. Accordingly, the Court set the matter for a hearing on April 19, 2016. At the hearing, Eric Singleton appeared for the Debtor, and Anthony M. Grover appeared for the Trustee. The Court expressed its concerns with granting such relief, and Debtor's counsel requested time to brief the issue. The Court continued the hearing and ordered the parties to submit supplemental briefing, if any, no later than May 10, 2016.[27]

On June 7, 2016, the Court conducted a final hearing on the Debtor's Motion to Reinstate Discharge. Eric Singleton appeared for the Debtor. Anthony M. Grover appeared for the Trustee. After hearing the arguments of counsel, the Court took the matter under advisement.

### III. DISCUSSION

The Debtor is seeking relief under Fed. R. Civ. P. 60(b)(5) and (6), as made applicable to bankruptcy matters by Fed. R. Bankr. P. 9024, from the Default Judgment revoking his discharge. While Rule 60(b) provides the possibility for relief from a final judgment, order, or proceeding, it is an extraordinary remedy that "may only be granted in exceptional

---

[25] Docket No. 42.

[26] Docket No. 44.

[27] On June 3, 2016, the Debtor filed an Ex-Parte Motion to Allow Late-Filed Memorandum of Law (Docket No. 51) and a Memorandum of Law Regarding Reopening of Case to Obtain Discharge (Docket No. 52). The Court granted the motion and considered the Debtor's late-filed memorandum in rendering its decision (Docket No. 57).

circumstances."[28] Further, "Rule 60(b) is 'not available to allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument.'"[29] Moreover, Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment."[30]

### A. The Debtor's Motion Under Rule 60(b) Is Not Timely.

The Debtor seeks relief from the Default Judgment under Rule 60(b)(5) because "the judgment has been satisfied, released, or discharged," and under Rule 60(b)(6) for "any other reason that justifies relief." Motions under these two subsections "must be made within a reasonable time" after the entry of the judgment or order.[31] What constitutes a reasonable time depends upon the facts and circumstances of the particular case.[32] Courts also consider prejudice to other parties arising from the delay in bringing a Rule 60(b) motion.[33]

In this case, the Debtor was represented by counsel and had adequate notice of all legal proceedings. The Debtor asserts that he had difficulty obtaining the requested bank statements, but he offers no mitigating explanation for his failure to respond to the Trustee's motion and adversary proceeding. Further, the Court has not heard a cogent reason as to why the Debtor waited almost seventeen months to seek relief from the Default Judgment revoking his discharge.[34] Finally, during those seventeen months, creditors had notice of the Default

---

[28] *F.D.I.C. v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998) (citing *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co.*, 909 F.2d 1437, 1440 (10th Cir. 1990)).

[29] *Id.* (quoting *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996)).

[30] *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (citing *Brown v. McCormick*, 608 F.2d 410, 413 (10th Cir. 1979)).

[31] Fed. R. Civ. P. 60(c)(1).

[32] *United States v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985).

[33] *See id.*

[34] The Default Judgment was entered on November 25, 2013, and the first motion to reinstate the discharge was filed on April 10, 2015, so a period of one year, four months, and sixteen days.

Judgment revoking the Debtor's discharge and were entitled to rely on its legal effect as to the collectability of their claims against the Debtor personally. As set forth more fully below, reinstating the Debtor's discharge at this late date—some two and a half years after the revocation of discharge—could result in confusion and prejudice to such creditors. Under these circumstances, the Court finds that the Motion to Reinstate Discharge was not brought within a reasonable time as required by Rule 60(c)(1).[35]

Nevertheless, even if seventeen months were a reasonable time within which to file the Motion to Reinstate Discharge, the Court would deny the requested relief for the following reasons.

### B. The Debtor's Culpable Conduct Caused the Default Judgment.

A party seeking relief from a default judgment must satisfy not only one of the discrete subparts of Rule 60(b),[36] but must also meet these three requirements: "(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment."[37] A court need not examine all three; "if the default was the result of defendant's culpable conduct, the district

---

[35] *See, e.g.*, *Cummings v. GMC,* 365 F.3d 944, 955 (10th Cir. 2004) (Rule 60(b) motion brought seven months after entry of order was not timely even with explanation that party wanted to carefully review facts and law before filing the motion); *Security Mut. Casualty Co. v. Century Casualty Co.*, 621 F.2d 1062, 1068 (10th Cir. 1980) (Rule 60(b) motion filed 115 days after entry of judgment, absent reasons for delay, was not filed within a reasonable time); *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) ("Appellant does not attempt to identify any good reason for not filing his 60(b)(4) motion until more than eleven months after he was properly served with the complaint and the default-judgment motion."); *In re Martin*, 268 B.R. 168, 171-72 (Bankr. E.D. Ark. 2001) *aff'd*, 271 B.R. 333 (8th Cir. BAP 2002) (Rule 60(b)(6) motion was not filed within a reasonable time where "debtor has made no explanation for her extreme delay in bringing this motion").

[36] *See* Fed. R. Civ. P. 55(c) ("The court may set aside . . . a *final* default judgment under Rule 60(b).").

[37] *United States v. Timbers Preserve*, 999 F.2d 452, 454 (10th Cir. 1993), *abrogated on other grounds by Degen v. United States*, 517 U.S. 820, 825 (1996); *see also Malloy v. Wallace (In re Wallace)*, 298 B.R. 435, 440 (10th Cir. BAP 2003) ("Before the default will be set aside under one of the 60(b) standards, a movant must also demonstrate that its culpable conduct did not cause the default, the movant has a meritorious defense, and the plaintiff will not be prejudiced by setting aside the judgment."), *aff'd*, 99 F. App'x 870 (10th Cir. 2004).

7

court may refuse to set aside the default on that basis alone."[38] "Generally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for the default."[39]

The Debtor has failed to establish any of these requirements, and the Motion to Reinstate Discharge could be denied exclusively for that reason. In addition, rather than showing that the Debtor's culpable conduct did not cause the default judgment, the Motion to Reinstate Discharge leads to the opposite conclusion. The motion states that the Debtor "did not appear or defend the adversarial case" because he was not able to obtain the bank statements.[40] In other words, the Debtor was aware of the proceedings against him, but chose not to answer the complaint or contest the entry of default judgment. As a result, his default was willful. This finding precludes the Debtor from availing himself of Rule 60(b), but even if it did not, relief would still be inappropriate under the subparts of Rule 60(b) that the Debtor invokes.

### C. The Default Judgment Revoking the Discharge Cannot Be "Satisfied" Under Rule 60(b)(5).

Fed. R. Civ. P. 60(b)(5) provides in relevant part: "On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . the judgment has been satisfied, released or discharged." The Debtor argues that he should be relieved from the Default Judgment revoking his discharge because he has now provided the Trustee with the requested bank statements, he has reached a "settlement" with the Trustee, and he has paid $2,793.00 into the estate to cover administrative costs. The Court disagrees.

Relief under Rule 60(b)(5) based on the satisfaction, release, or discharge of a judgment typically refers to "a money judgment or conditional injunction [that] can be satisfied by [the]

---

[38] *Felts v. Accredited Collection Agency, Inc.*, 267 F.R.D. 377, 379 (D.N.M. 2010) (citations and internal quotation marks omitted), *aff'd*, 406 F. App'x 309 (10th Cir. 2011).

[39] *Timbers Preserve*, 999 F.2d at 454.

[40] Docket No. 42, ¶ 8.

payment of a sum of money or the performance of a condition."[41] This language is "generally invoked when a party seeks entry of satisfaction of judgment because no acknowledgment of satisfaction has been delivered due to an ongoing dispute over the judgment amount."[42] Unlike a judgment for money or the production of documents, a judgment revoking a debtor's discharge is "punitive in nature" and does not "compel the [d]ebtor to perform or refrain from performing some future act."[43] In the cases examined by this Court, a judgment revoking a debtor's discharge falls outside the scope of judgments that can be "satisfied" within the meaning of Rule 60(b)(5).[44]

In this case, the Default Judgment revoked the Debtor's discharge as a punitive sanction for his prior failure to obey the Court's lawful order to turn over documents to the Trustee. Unlike a judgment mandating or enjoining some future act, the revocation of a discharge is based on a debtor's prior prohibited or unresponsive conduct in the bankruptcy case that cannot be absolved by future performance unless specifically stated in the order. Thus, it is difficult to imagine a situation where a judgment revoking a debtor's discharge under § 727(d) could ever be "satisfied" within the meaning of Rule 60(b)(5).

In addition, the Debtor requests relief from the Default Judgment under Rule 60(b)(5) because he has paid $2,793.00 to the Trustee to cover administrative costs. Essentially, the Debtor is offering to "buy back" his discharge some years after it was revoked. The Debtor

---

[41] *In re Christensen*, No. 09-20299-PRW, 2015 WL 6125537, at *4 (Bankr. W.D.N.Y. Oct. 16, 2015) (citing *In re Jacobs*, No. 05-19032, 2008 WL 4369273, at *9 (Bankr. D. Kan. Sept. 22, 2008)).

[42] *Zamani v. Carnes*, 491 F.3d 990, 995 (9th Cir. 2007); *see also Kleven v. Mrozinski (In re Mrozinski)*, 489 B.R. 818, 821 (Bankr. N.D. Ind. 2013) ("[T]his part of Rule 60(b)(5) appears to serve as a defendant's remedy when the holder of the judgment refuses to acknowledge that it has been satisfied or to file a satisfaction of judgment.").

[43] *In re Christensen*, 2015 WL 6125537, at *4 (citations omitted).

[44] *See, e.g.*, *In re Mrozinski*, 489 B.R. at 823 ("[T]he court holds that a debtor who has had a discharge revoked or denied due to the failure to obey a court order is not entitled to have the discharge restored, through the use of Rule 60(b)(5), by coming forward with belated compliance."); *In re Jacobs*, 2008 WL 4369273, at *3 ("As a practical matter, a judgment revoking a debtor's discharge can never be satisfied. Therefore, the first clause of Rule 60(b)(5) is of no avail here.").

places great emphasis on his "settlement" with the Trustee and the Trustee's lack of objection to his motion. The Debtor is effectively requesting post-judgment approval of a settlement with the Trustee which, in the Court's view, invokes a discussion as to when it is appropriate for the Court to approve the settlement of a § 727 action brought by a trustee.

While there is no *per se* rule against § 727 settlements, they are nonetheless "viewed with heightened scrutiny"[45] to protect the integrity of the bankruptcy system and to prevent unfair prejudice to creditors.[46] Courts typically ask "whether the proposed settlement is fair and equitable and in the best interest of the estate and all creditors."[47]

In this case, it is unclear how creditors of the estate will benefit from the Debtor's payment of $2,793.00 to the Trustee. At this point, the claims deadline has passed, and three unsecured creditors have filed claims totaling $18,505.35. The Debtor's Motion to Reinstate Discharge indicates that the payment is intended to cover the Trustee's fees. This strongly suggests there will be little or no return to creditors. As set forth more fully below, the Court is also concerned as to the settlement's potential prejudice to creditors who have rightly assumed for the past few years that their claims were not discharged.

Moreover, the Court is concerned with the perception created by the Debtor's Motion to Reinstate Discharge. Other bankruptcy courts have found requests to reinstate a discharge based upon delayed compliance to be "unpalatable and dangerous"[48] because granting such requests would "encourage debtors to, in effect, play chicken when it comes to responding to the trustee's demands and to adopt a pattern of obdurate behavior which would test the trustee's seriousness

---

[45] *In re Roqumore*, 393 B.R. 474, 483 (Bankr. S.D. Tex. 2008).

[46] *Id.*; *see also State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310-11 (2d Cir. 1996).

[47] *In re Djili*, No. 09-47844, 2012 WL 5246510, at *4 (Bankr. N.D. Cal. Oct. 23, 2012); *see also Wolinsky v. Maynard (In re Maynard)*, 269 B.R. 535, 542 (D. Vt. 2001) ("The Bankruptcy Court should not categorically disapprove settlement of a complaint objecting to discharge, but should use its judgment to approve a settlement only if it is fair and equitable and in the best interests of the estate.").

[48] *In re Christensen*, 2015 WL 6125537, at *4.

in making them."[49] In turn, this would erode a trustee's authority to require the prompt production of documents from debtors and "would undermine the deterrent effect § 727 is supposed to have and do nothing to improve the efficiency of the administration of bankruptcy estates."[50] Thus, the Court declines to relieve the Debtor from the consequences of his repeated failures to respond to the Trustee's efforts to obtain basic information regarding his financial affairs.[51]

### D. The Debtor Is Not Entitled to Relief Under Rule 60(b)(6).

Fed. R. Civ. P. 60(b)(6) provides that a court may relieve a party from a judgment or order on motion and just terms for "any other reason that justifies relief." While Rule 60(b)(6) provides a "grand reservoir of equitable power to do justice in a particular case,"[52] the Tenth Circuit has also cautioned that a court has discretion to grant relief under Rule 60(b)(6) only when there are "extraordinary circumstances and only when necessary to accomplish justice."[53]

The existence of "extraordinary circumstances" most often requires an absence of fault by the moving party:

> The cases seem to make [the] fault/no fault distinction the controlling factor in determining whether extraordinary circumstances will be found or not. In a vast majority of the cases finding that extraordinary circumstances do exist so as to justify relief, the movant is completely without fault for his or her predicament; that is, the movant was almost unable to have taken any steps that would have resulted in preventing the judgment from which relief is sought.[54]

---

[49] *In re Mrozinski*, 489 B.R. at 823.

[50] *Id.*

[51] Even without a specific request from the Trustee, the Debtor had a duty under Fed. R. Bankr. P. 4002(b)(2)(B) to produce at his first meeting of creditors copies of bank statements covering the petition date.

[52] *Pierce v. Cook & Co.*, 518 F.2d 720, 722 (10th Cir. 1975).

[53] *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 579 (10th Cir. 1996).

[54] 12 Joseph T. McLaughlin & Thomas D. Rowe, Jr., Moore's Federal Practice – Civil § 60.48[3][b] (2016).

Extraordinary circumstances can arise when there is an "unanticipated intervening change of circumstances," or when it "'offends justice' to deny such relief."[55] In contrast, it is not appropriate to unleash the broad equitable power of Rule 60(b)(6) for the "'purpose of relieving a party from free, calculated and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests.'"[56]

The Debtor's Motion to Reinstate Discharge argues that his difficulty in obtaining the requested bank statements warrants relief under Rule 60(b)(6). While acknowledging the efforts of Debtor's counsel in ultimately obtaining and producing the bank statements, the Court declines to consider such difficulties as an extraordinary circumstance within the meaning of Rule 60(b)(6). This is because the Debtor had multiple opportunities to make the Trustee and the Court aware of these problems before the case reached its present status. Specifically, the Debtor could have informed the Trustee of the difficulties when she requested the bank statements, which would have been the most reasonable time to raise the issue. He could have explained the difficulties in a response to the Trustee's motion for turnover. He could have asserted them as a defense to the Trustee's complaint, or at the very least he could have stated them in opposition to the Trustee's motion for default judgment. Finally, he could have appealed the entry of the Default Judgment. Instead, the Debtor remained passively silent throughout his case. Thus, while the Debtor may have had some valid difficulties in obtaining the bank statements, he is without excuse as to his failure to respond to the Trustee's requests or to otherwise participate in the resultant legal proceedings in his case.[57] The Debtor's belated wishes to comply and now

---

[55] *Cashner*, 98 F.3d at 579-80 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1147 (10th Cir. 1990)).

[56] *Id.* at 580 (quoting 11 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2864, p. 359).

[57] As noted above, at all times in this case the Debtor was represented by counsel, and notices of all matters were properly served on the Debtor by first-class mail sent to his address on file with the Court.

participate in his bankruptcy case after years of dormancy are insufficient to merit the extraordinary relief of Rule 60(b)(6).[58]

The Court is also concerned that reinstating the Debtor's discharge two and a half years after it was revoked would "upset the delicate balance between the finality of judgment and justice that Rule 60(b) seeks to maintain."[59] As noted by the Supreme Court, Rule 60(b) "strikes a balance between the need for finality of judgments and the importance of ensuring that litigants have a full and fair opportunity to litigate a dispute."[60]

The order revoking the Debtor's discharge has been a final, non-appealable order for two and a half years. As mentioned above, the Debtor had a full and fair opportunity before the revocation of his discharge to explain his difficulties in obtaining the bank statements. The Court must assume that during the intervening time, creditors have relied on that revocation and have appropriately proceeded with collection efforts in one form or another, including actions of which the Debtor may not yet be aware. Disturbing the finality of the Default Judgment at this point would set a precarious precedent in cases where a debtor ignores a trustee's requests and legal proceedings that ultimately result in the denial of a discharge, and then later seeks to turn back the clock on creditors who have proceeded for some years on the assumption that their claims remained collectible against the debtor. For example, if creditors have taken collection actions during this time period, a reinstatement of the discharge could create confusion as to the validity of such actions and raises the possibility of creditor liability under § 524 or one or more of the state or federal consumer protection statutes. The intrinsic finality of the Default Judgment

---

[58] *See In re Mrozinski*, 489 B.R. at 823 (belated compliance by a debtor does not entitle a debtor to a reinstated discharge; rather, "the trustee is entitled to both compliance and denial or revocation of discharge").

[59] *Cashner*, 98 F.3d at 580 (citation and internal quotation marks omitted).

[60] *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010). While *Espinosa* involved a request for relief under Rule 60(b)(4), the Court finds its general analysis on the finality of judgments applicable and persuasive in the current case.

revoking the Debtor's discharge, and the presumed reliance by parties-in-interest on such judgment over a period of two and a half years, must trump the Debtor's tardy efforts to rectify his omissions and inactions and thereby reinstate his discharge.

## IV.     CONCLUSION

The Court denies the Debtor's request to set aside the Default Judgment and to reinstate his discharge under Rules 60(b)(5) and (6). Because a revocation of discharge is punitive in nature, it falls outside the category of conditional acts that can be "satisfied, released or discharged" under Rule 60(b)(5). In addition, the Debtor's delayed compliance with the Turnover Order and payment to the Trustee for her attorney's fees do not constitute the "extraordinary circumstances" contemplated by Tenth Circuit case law under Rule 60(b)(6) that would justify reinstating the Debtor's discharge two and a half years after it was revoked. In sum, it is now simply too little and too late for the Debtor to try and salvage his discharge. An order will be entered in accordance with this Memorandum Decision.

_____ooo0ooo_____

**DESIGNATION OF PARTIES TO RECEIVE NOTICE**

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Anthony M. Grover | tgrover@wklawpc.com, kmacrae@wklawpc.com, ckirk@wklawpc.com |
| Elizabeth R. Loveridge | eloveridge@wklawpc.com, rchristensen@wklawpc.com, eloveridge@ecf.epiqsystems.com |
| Eric C. Singleton | eric@thealtalawgroup.com, lesli@thesingletongroup.com, colette@thesingletongroup.com, singletonecf@gmail.com, lacey@thesingletongroup.com |
| United States Trustee | USTPRegion19.SK.ECF@usdoj.gov |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

George F. Bench
86 M Street
Salt Lake City, UT 84103